[No. 1421.]

## William McGrew *v.* The State.

1. Incest—Evidence.—In a prosecution for incest, based upon the carnal intercourse of step-father and step-daughter, there must be presented affirmative evidence of the legal marriage of the former with the mother of the latter.
2. Same.—And where it is shown that there had been a former marriage between the mother of the step-daughter and some third male person, prior to the marriage of the mother to the step-father, it must affirmatively appear that, at the time of such second marriage, the first had been dissolved, either by death or legal divorce.
3. Same.—The testimony of the mother of the step-daughter that "my first husband died in Grimes county, as I understood," is not sufficient to establish the death of the first husband, nor that he died before the second marriage was contracted.
4. Same.—The legal marriage of the step-father and the mother must be established, before the carnal intercourse of the step-father and the step-daughter can be held to constitute the offense of incest.

APPEAL from the District Court of Milam.   Tried below before the Hon. W. E. Collard.

The indictment charged the appellant with the crime of incest with his step-daughter, Alice Jameson.   He was found guilty by the jury, and his punishment was assessed at two years in the penitentiary.

By the records of the county court, and by R. J. Boykin, county judge of Milam county, the officer who performed the ceremony, the State proved the marriage of the appellant to Mrs. Andrew Jameson, the mother of Alice Jameson, on the twenty-sixth day of November, 1878.

The material portion of the testimony of Joe Dennis, sworn for the State, was that Alice Jameson was the reputed daughter of the defendant's wife by a former husband.   The witness passed the night of Saturday before the first Sunday in October, 1882, at the house of the defendant, and slept in a room in full view of the room in which the defendant, his wife, and Alice Jameson occupied beds.   The defendant and his wife occupied one bed, and Alice occupied another.   There was an unclosed doorway between this room and the room occupied by the witness, through which, from his bed, the witness had an unobstructed view into the defendant's room.   About good daylight on the Sunday morning in question, the defendant left the bed occupied by him and his wife, and got into the bed occupied by Alice Jameson.   The witness testified emphatically that he could see the parties plainly from where he lay, and that he witnessed an act of copulation between the defendant and Alice Jameson. The witness reported this fact to the authorities of the church of which both he and the defendant were members, and charges were immediately preferred against the defendant, in the church. Alice Jameson was pregnant in August, 1882, to the knowledge of the witness.

Jeff Hendricks testified, for the State, that in the spring of 1880, he detected the defendant and Alice Jameson in the act of copulation in the cotton patch of the defendant.   When the witness surprised them in the act, they got up from the ground, and the witness turned and left them.

The father and uncle of the defendant testified, in his behalf, that Alice Jameson was the daughter of the defendant's wife by a former husband.   They were uncles of the witness Hendricks,

and were familiar with his reputation for truth and veracity, which was bad.

Ann McGrew testified, for the defense, that she was the wife of the defendant and the mother of Alice Jameson by a former husband, who, she understood, had died in Grimes county. She remembers the Saturday night which the witness Dennis spent at her house. She knew that the defendant did not, on that night, get into the bed with Alice and have carnal intercourse with her. The witness was sick that night, and shortly before daylight the defendant got up to give some attention to her, and, while up, he went to the bed occupied by Alice and other children and arranged their cover, which they had kicked off. He did not get into bed nor have carnal intercourse with Alice, nor could he have done so without her knowledge. Dennis had aspired to wait upon Alice, and to woo her, but, having been repulsed, was angry with her. Because she was approaching the crisis of an interesting condition, Alice could not attend court. The witness admitted upon cross-examination that Alice was pregnant, and in daily expectation of confinement.

The motion for new trial arraigned the charge of the court, and the testimony upon the ground involved in the rulings of this court.

*McGregor & Lott*, for the appellant.

*O. S. Eaton*, for the State.

WHITE, P. J. This appeal is from a conviction for incest. As averred in the indictment, the charge was that defendant, at the time laid, "then and there being a married man having a lawful wife, to-wit, Ann McGrew, did have unlawful carnal connection with and unlawfully and carnally know one Alice Jameson, the offspring and daughter of his said wife."

To establish the crime thus charged it was essential that the State should prove that Ann McGrew, the mother, was *the lawful* wife of defendant. It is shown by the evidence before us that the parties were married according to the forms of law. But the evidence further shows that a previous marriage had existed between Ann McGrew and one Andrew Jameson, and that the girl with whom the incestuous intercourse was had was the issue of this previous marriage. Nowhere, however, is it made to appear that at the time of the second marriage the first

had been annulled, either by divorce or by the death of the first husband. Upon this point the only evidence in the record is a statement in the testimony of Ann McGrew to the effect that "my first husband died in Grimes county, as I understand." From this statement it is extremely uncertain that the first husband is dead; and, if dead, did he die before or after her second marriage? If after, then the second marriage was a nullity, provided she had not been divorced from him, and she could not become the lawful wife of McGrew by virtue of such illegal marriage. If she was not his lawful wife, then the illicit connection of McGrew with her daughter by the previous marriage, however reprehensible in morals, would not constitute the crime of incest in law. Divorce from or the death of the first husband at the time of the second marriage should have been proven affirmatively, because absolutely essential to the establishment of the crime charged, and to the validity of a conviction under the circumstances stated.

Because the evidence is insufficient, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered January 13, 1883.